1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| JOHN R. OGORSOLKA and LISA K. OGORSOLKA, husband and wife, | ) ) |
| Plaintiffs, | ) )   NO.  2:14-cv-00078-RSM ) |
| v. | ) ORDER GRANTING MOTIONS TO ) DISMISS ) |
| RESIDENTIAL CREDIT SOLUTIONS, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2007-2 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-2, BAC HOME LOANS, LP, and BANK OF AMERICA, N.A., | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## I. INTRODUCTION

This matter comes before the Court upon Defendant Bank of New York Mellon, FKA the Bank of New York as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2007-2 Mortgage Pass-Through Certificates, Series 2007-2 ("BNYM")'s Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim, and BAC Home Loans, LP ("BAC Home Loans") and Bank of America, N.A.'s (collectively "BANA") Motion to Dismiss Plaintiff's Complaint.  For the reasons that follow, the motions will be granted.

ORDER GRANTING MOTIONS TO DISMISS-1

## II.  BACKGROUND

As alleged by Plaintiffs, on or about January 4, 2007, in consideration for a loan, John R. Ogorsolka and Lisa K. Ogorsolka executed a promissory note ("Note") in the amount of $504,000.00 in favor of North County Bank. Dkt. # 1-1, Compl., ¶ 8. On or about January 4, 2007, to secure repayment of the Note, Plaintiffs executed a Deed of Trust encumbering real property located at 1826 Rucker Avenue, Everett, Washington 98201 ("Property"). The Deed of Trust was recorded in the records of Snohomish County as Instrument No. 200701100091. *Id.* at ¶ 10; Riel Decl., Ex. 1.

The mortgage was transferred into a mortgage backed security trust, CWMBS, Inc., CHL Mortgage Pass-Through Trust 2007-2 Mortgage Pass-Through Certificates, Series 2007-2, for which BNYM is the Trustee. Dkt. # 2-1, ¶ 38. On or about December 14, 2011, an Assignment of the Deed of Trust ("Assignment") was recorded wherein Mortgage Electronic Registration Systems, Inc. ("MERS") assigned all beneficial interest under the Deed of Trust to BNYM. *Id.* at ¶ 24; Riel Decl., Ex. 2. The Assignment was recorded in the official records of Snohomish County as Instrument No. 201112140475. *Id.* On or about October 14, 2013, a Notice of Default and Intent to Accelerate ("Demand Letter") was transmitted to the Ogorsolkas by the servicer of the underlying loan notifying them that the total amount need to cure the default on the loan was $102,461.12 and that if not paid by a date certain, the servicer may take steps to accelerate the sums secured by the Deed of Trust, including foreclosure. Dkt. # 1-1 at ¶ 33; Dkt. # 14-1.

On or about November 4, 2013, a Pre-Foreclosure Notice to Borrower ("Pre-Foreclosure Notice") was transmitted to the Ogorsolkas by the servicer of the underlying loan notifying them of their continued default and requesting that Plaintiffs contact the servicer to discuss

ORDER GRANTING MOTIONS TO DISMISS-2

any available alternatives to foreclosure. Dkt. # 1-1, ¶ 35; Dkt. # 13-2. Plaintiffs filed the instant

Complaint seeking damages and equitable relief for alleged violations of the Washington Deed

of Trust Act ("DTA"), RCW § 61.24 *et seq.*; the Washington Consumer Protection Act ("CPA"),

RCW § 19.86 *et seq.*; for breach of contract; and for common law fraud and misrepresentation.

Defendants BANA and BNYM filed motions to dismiss the claims against them pursuant to Fed.

R. Civ. P. 12(b)(6).

### III. DISCUSSION

As an initial matter, Defendants ask the Court to consider several publicly available

documents that were not attached to, but were relied upon, in the Complaint. The documents

include the following: a copy of the Deed of Trust encumbering the property (Dkt. # 14-1, Riel

Decl., Ex. 1); a copy of the Assignment of the Deed Trust assigning the Deed of Trust to BNYM

(Dkt. # 14-2, Riel Decl., Ex. 2); and copies of the Demand Letter and the Pre-Foreclosure Notice

(Dkt. # 13, Ex. A & B). On a Rule 12(b)(6) motion, the court may consider documents "whose

contents are alleged in a complaint and whose authenticity no party questions, but which are not

physically attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir.

2005) (citations omitted). The documents presented fit this category and may be properly

considered by the Court.

#### A.  Legal Standard

In considering a Rule 12(b)(6) motion to dismiss, the Court must determine whether the

plaintiff has alleged sufficient facts to state a claim for relief which is "plausible on its face."

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  A claim is facially plausible if the plaintiff has pled "factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

ORDER GRANTING MOTIONS TO DISMISS-3

alleged." *Id.* (citing *Twombly,* 550 U.S. at 556).  In making this assessment, the Court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party.  *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted).  The Court is not, however, bound to accept the plaintiff's legal conclusions.  *Iqbal*, 129 S. Ct. at 1949-50.  While detailed factual allegations are not necessary, the plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.

**B.  Analysis**

Plaintiffs bring claims against both BANA and BNYM for violations of the DTA, the CPA, fraud, and breach of contract. These claims rest on three overarching and well-worn theories: (1) that Defendant MERS was an ineligible beneficiary under the Deed of Trust, which rendered the Note and Deed of Trust void; (2) the Note was deprived of its status as a negotiable instrument once it was securitized, which again rendered the Note and Deed of Trust void; and (3) BANA and BNYM were required to negotiate in good faith to provide Plaintiffs with a loan modification. As alleged, no theory is sufficient to state cognizable claims against either BANA or BNYM.

The bulk of Plaintiffs' allegations against BNYM appear to relate generally to BYNM's status as Trustee for the Certificate holders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2007-2 Mortgage Pass-Through Certificates, Series 2007-2, a mortgage-backed security pool governed by a pooling and services agreement. Plaintiffs allege that "[t]he transfer, if any, into the herein-referenced mortgage-backed security pool was fraudulent." Dkt. # 1.1, ¶ 38. The Complaint then references a pooling and servicing agreement, the trust classes within that agreement, and alleges that transfer violated the terms of the pooling and services agreement. *Id.*

at ¶¶ 39-46. It alleges that when the Note was sold into a mortgage-backed security pool, "the Note [was] no longer a negotiable instrument . . , which means the Note has been rendered void and unsecured." *Id.* at ¶ 47. Thus, according to Plaintiffs, BNYM was not a lawful beneficiary of the Deed of Trust and lacked authority to appoint a successor trustee to initiate foreclosure proceedings.

BNYM contends that to the extent Plaintiffs' claims depend on the viability of securitization theory, they fail to state a cognizable claim for which relief can be granted. For the allegations against both BNYM and BANA that do not rely on the securitization theory, BNYM and BANA argue that Plaintiffs' allegations are factually insufficient to support Plaintiffs' asserted causes of action. The Court agrees that Plaintiffs' general challenge to securitization process does not support cognizable claims, and that, as pled, the Complaint's factual allegations are insufficient to raise the right to relief above mere speculation.

1. Securitization Theory

Several Washington district courts have held that a borrower does not have standing to enforce the terms of pooling and servicing agreements to which he or she is not a party. *Brodie v. Nw. Tr. Servs., Inc.*, 12-CV-0469-TOR, 2012 WL 4468491 (E.D. Wash. Sept. 27, 2012) (collecting cases); *See Borowski v. BNC Mortgage, Inc.*, C12-5867 RJB, 2013 WL 4522253, *5 (W.D. Wash. Aug. 27, 2013), appeal dismissed (Oct. 25, 2013), *motion for relief from judgment denied*, C12-5867 RJB, 2013 WL 5770378 (W.D. Wash. Oct. 24, 2013) ("there is ample authority that borrowers, as third parties to the assignment of their mortgage (and securitization process), cannot mount a challenge to the chain of assignments unless a borrower has a genuine claim that they are at risk of paying the same debt twice if the assignment stands").  Plaintiffs cite to federal and state case law from other states to counter this rule. None of those cases are

ORDER GRANTING MOTIONS TO DISMISS-5

binding on this Court, nor are they persuasive. For example, Plaintiffs rely heavily on *Glaski v. Bank of Am., Nat'l Ass'n*, 160 Cal. Rptr. 3d 449, 452 (Cal. Ct. App. 2013), reh'g denied (Aug. 29, 2013) for the proposition that a borrower may have standing to challenge the legitimacy of a transfer of a note into a securitized trust. However, "no California court has followed *Glaski* on this point, and many have pointedly rejected it." *Yvanova v. New Century Mortg. Corp.*, No. B247188, 2014 WL 2149797, *5 (Cal. Ct. App. April 25, 2014) (collecting cases).

Plaintiffs do not allege that they were investors in a trust or a party to any purchase and sale agreement and as third party borrowers, they lack standing to enforce any terms of the pooling and services agreement. *Zhong v. Quality Loan Service Corp.*, No. C13-0814JLR, 2013 WL 5530583, *4 (W.D. Wash. Oct. 7, 2013). Thus, to the extent Plaintiffs' allege that BNYM is liable under any asserted claim on the basis that securitization rendered the Note void, such allegations fail to state a claim as a matter of law.

2. <u>CPA</u>

To state a claim for violation of the CPA, a plaintiff must allege (1) an unfair or deceptive trade practice; (2) that occurs in trade or commerce; (3) that has an impact on the public interest; (4) that causes the plaintiff injury to her business or property; and (5) there is a causal link between the unfair or deceptive act and the injury suffered. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986).

Plaintiffs allege that BANA and BNYM "wrongfully caused to be sent . . . notices of default and debt collection letters . . . when . . . Defendants knew or should have known that their actions were unfair and deceptive and would cause harm to Plaintiff [sic]." Dkt. # 1-1, ¶ 54. This allegation appears to challenge both BANA and BNYM's right to collect loan payments from Plaintiffs and the propriety of RCS's issuance of the Demand Letter or Pre-Foreclosure Notice.

ORDER GRANTING MOTIONS TO DISMISS-6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Plaintiffs' allegation rests on the theory that the assignment executed by MERS in favor of BNYM rendered the Note and Deed of Trust void.

Plaintiffs contend that because MERS was an ineligible beneficiary and not entitled to assign the Deed of Trust, the chain of title is broken and no entity has authority to enforce the Deed of Trust against Plaintiffs. Plaintiffs' arguments rely on a fundamentally flawed interpretation of Washington law. Courts have held that although MERS may be an ineligible beneficiary under the DTA per the Washington Supreme Court's decision in *Bain v. Metropolitan Mortg. Grp.*, 285 P.3d 34 (Wash. 2012), the "conclusory allegation that MERS did not have the authority to transfer the Deed of Trust" alone, fails to state a claim. *Zhong v. Quality Loan Serv. Corp.*, No. C13-0814JLR, 2013 WL 5530538, *3 (W.D. Wash. Oct. 7, 2013) (citation omitted). Importantly, under *Bain* "the mere fact MERS is listed on the deed of trust as a beneficiary in not itself an actionable inquiry." 285 P.3d at 52. In Washington, a lawful beneficiary is the actual holder of the note. RCW § 61.24.005(2). As pled in the Complaint, the facts of this case do not implicate the MERS issue because the fact that MERS assigned its "interest" at some point does nothing to inform whether BNYM was the holder of Plaintiffs' Note and a lawful beneficiary under the DTA. *See Lynott v. Mortg. Elec. Registration System,* No. 12-cv-5572-RBL, 2012 WL 5995053, *2 (W.D. Wash. Nov. 30, 2012) ("possession of the note makes U.S. Bank the beneficiary; the assignment [of the deed of trust] merely publicly records that fact").

Although the Washington Supreme Court has held that MERS' presence in the chain of title may "presumptively meet[] the deception element of a CPA claim" (*Bain,* 285 P.3d at 51–52), a plaintiff must still plead all CPA elements to state a viable claim.  To satisfy the causation element, "[a] plaintiff must establish that, but for the defendant's unfair or deceptive practice, the

ORDER GRANTING MOTIONS TO DISMISS-7

plaintiff would not have suffered an injury." *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 170 P.3d 10, 22 (Wash. 2007). Here, Plaintiffs' allegations concerning MERS' temporary status as an invalid beneficiary on the Deed of Trust do not demonstrate that MERS' presence in the chain of assignments was causally related in any way to their uncontested loan default. Assignments of a deed of trust serve only "to put parties who subsequently purchase an interest in the property on notice of which entity owns a debt secured by the property." *Corales v. Flagstar Bank, FSB*, 822 F. Supp. 2d 1102, 1109 (W.D. Wash. 2011) (citing RCW 65.08.070). Plaintiffs do not allege that they failed to make payments because they did not know where to send payments or know what entity was servicing their loan. Thus, to the extent the CPA allegations are premised on the presence of MERS on the Deed of Trust or the invalidity of the MERS assignment, the Complaint fails to state a claim for violation of the CPA. *See Zhong*, 2013 WL 5530583 at *5.

Plaintiffs also contend that the failure of BANA to give them a loan modification constituted a violation of the CPA. The allegations levied to support this theory are insufficient as well. Plaintiffs failed to allege that BANA was under a contractual obligation to provide Plaintiffs with a loan modification. And Plaintiffs failed to plead factual allegations to demonstrate that BANA acted improperly by failing to offer a loan modification. The Complaint alleges only that Mr. Ogorsolka tried to initiate the application process for obtaining a loan modification with BANA, and that BANA sent "ongoing requests for additional information and/or their [sic] request to send the same information again." *See* Dkt. # 1-1, ¶¶ 12-17. Plaintiffs rely on the Ninth Circuit Court of Appeal's decision in *Corvello v. Wells Fargo Bank N.A.* to support their assertion that BANA acted in an unfair and deceptive manner. 728 F.3d 878 (9th Cir. 2013).

ORDER GRANTING MOTIONS TO DISMISS-8

Plaintiffs' reliance on *Corvello* is misplaced and fails to cure the Complaint's deficiencies. In *Corvello*, the issue before the Court was whether the bank that serviced plaintiffs' mortgage loan was contractually required to offer a permanent loan modification after plaintiffs complied with the requirements of a trial period plan ("TPP"). *Id.* at 880. After considering the Seventh Circuits' decision in *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012), and construing the relevant language of the TPP under California law, the Court held that "where borrowers allege, and we must assume, that they have fulfilled all of their obligations under the TPP, and the loan servicer has failed to offer a permanent modification, the borrowers have valid claims for breach of the TPP agreement." *Id.* at 884.

Here, the Complaint does not allege that the Ogorsolkas completed the application process, that they complied with the requirements of the TPP, or even that they were wrongfully denied a loan modification for which they were eligible. Instead, the Complaint summarily concludes that BANA "was attempting to create a situation where plaintiff's loan modification attempts would fail, which would put Bank of America in a position to foreclose on the property." *Id.* at ¶ 17.  Such allegations do not plausibly show that BANA acted deceptively during the alleged modification process and that its actions caused Plaintiffs' injury. Thus, the allegations are insufficient to demonstrate a factually-supported right to relief under the CPA.

3. <u>DTA</u>

"In Washington, '[a] mortgage creates nothing more than a lien in support of the debt which it is given to secure.'" *Bain,* 285 P.3d 34 at 38 (quoting *Pratt v. Pratt*, 209 P. 535, 535 (Wash. 1922)). Mortgages secured by a deed of trust "do not convey the property when executed; instead, '[t]he statutory deed of trust is a form of a mortgage.'" *Id.* (quoting 18

William B. Stoebuck & John W. Weaver, Washington Practice: Real Estate: Transactions § 17.1, at 253 (2d ed. 2004)). In effect, "'it is a three-party transaction in which land is conveyed by a borrower, the 'grantor,' to a 'trustee,' who holds the title in trust for a lender, the 'beneficiary,' as security for credit or a loan the lender has given the borrower.'" *Id.* (quoting Stoebuck & Weaver, § 17.3, at 260). However, "only the actual holder of the promissory note or other instrument evidencing the obligation may be a beneficiary with the power to appoint a trustee to proceed with a nonjudicial foreclosure on real property." *Id.* at 36.

Plaintiffs contend that BANA and BNYM violated the Washington DTA when they instituted foreclosure proceedings against them. Notwithstanding that the Complaint fails to allege that foreclosure proceedings were actually commenced, Plaintiffs rely again on the presence of MERS on the Deed of Trust and the MERS assignment to argue that the Deed of Trust and Note were void. As discussed above, these theories misapply the law. In Washington, the beneficiary is the holder of the instrument secured by the deed of trust. RCW § 61.24.005(2). If a lawful beneficiary initiates foreclosure proceedings, the MERS issue is simply not present and allegations of MERS-related wrongdoing alone are insufficient to maintain a viable DTA claim.

4.   Fraud and Misrepresentation

To state a claim for fraud under Fed. R. Civ. P. 9(b), the Complaint must allege the circumstances constituting fraud with particularity. To survive a 12(b)(6) motion, allegations must be pled with "more specificity including account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356

ORDER GRANTING MOTIONS TO DISMISS-
10

F.3d 1058, 1066 (9th Cir. 2004). In Washington, to state a claim for fraud, a plaintiff must allege:

> a representation of an existing fact; (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it; (9) his consequent damage.

*Kirkham v. Smith*, 23 P.3d 10, 13 (Wash. Ct. App. 2001). Further, "it is clear that common law fraud requires proof of a knowing and intentional misrepresentation." *Id.*

Plaintiffs contend that BANA and BNYM are liable for fraud based upon MERS' presence in the Deed of Trust and "robo-signing of the assignment." Dkt. # 24, p. 20. Taking the MERS theory first, Plaintiffs have failed to plead a number of required elements of fraud. First, MERS' purported assignment of the Deed of Trust to BNYM was not made for Plaintiffs' benefit and the Complaint does not allege that Defendants represented to Plaintiffs that MERS held beneficiary status when executing that assignment. Second, *Bain* was decided in 2012, well after MERS allegedly acted as an ineligible beneficiary in assigning the Deed of Trust on December 14, 2011. Defendants could not have known that they were committing fraud by listing MERS as the "beneficiary" of the deed of trust before *Bain*. Third, Plaintiffs have alleged no facts to show that they relied on MERS's "fraudulent" presence whatsoever or that they took any action in reliance of MERS acting as the purported beneficiary.

As to the "robo-signing" theory, Plaintiffs again fail to plausibly allege facts that satisfy the elements of fraud. The Complaint merely alleges that BANA "committed fraud when [it] fraudulently executed the Assignment of the Deed of Trust using a known robo-signer." Dkt. # 1-1, ¶ 72. This bare-bones conclusion fails to identify any facts to show that the "robo-signing"

ORDER GRANTING MOTIONS TO DISMISS-
11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

was a statement made to induce their reliance, that it caused them any specific damages, or that it affected their ability to comply with their loan obligation.

     5.  <u>Breach of Contract</u>

     In their Complaint, Plaintiffs asserted that Defendants "breached the contract when MERS appeared as nominee for the beneficiary on the Deed of Trust." Dkt. # 1-1, ¶ 79. Defendants moved to dismiss the breach of contract claim on the basis that MERS' presence on the Deed of Trust does not invalidate Plaintiffs' loan obligation; that Plaintiffs fail to identify which portions of the contract MERS' presence violated; and that because Plaintiffs do not deny that they defaulted on their loan, they did not perform every material provision of the contract. Plaintiffs' response brief failed to address any of these points, and instead argued that BNYM and BANA breached the duty of good faith and fair dealing by failing to offer Plaintiffs a loan modification and by appointing RCS as the new loan servicer.

     Plaintiffs' Complaint failed to identify any relevant portion of a contract that Defendants breached, and their response brief failed to address any of the arguments raised by Defendants. Although the Court may dismiss the claim on that basis alone (*see* LCR 7(b)(2)), Plaintiffs' Complaint also failed to identify any portion of the contract for which Defendants breached the duty of good faith and fair dealing. By failing to identify which terms of the loan give rise to their claims, Plaintiffs have failed to state a cognizable legal claim for either breach of contract or breach of the duty of good faith and fair dealing. *See e.g., Chapel v. BAC Home Loans Serv., LP*, No-C11-5882BHS, 2012 WL 727135, *4 (W.D. Wash. Mar. 6, 2012) (dismissing claim "based on [Plaintiff's] failure to show which terms of the contract give rise to a claim for breach of the duty of good faith and fair dealing").

ORDER GRANTING MOTIONS TO DISMISS- 12

# IV. CONCLUSION

Having considered the motions, the responses and replies thereto, the declarations and attached exhibits, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendant BNYM's Motion to Dismiss (Dkt. # 13) is GRANTED;

(2) Defendant BANA's Motion to Dismiss (Dkt. # 10) is GRANTED;

(3) Plaintiffs' Complaint is dismissed without prejudice as to Defendants BNYM and BANA;

(4) Plaintiffs shall have <u>fourteen (14) days</u> to file an amended complaint that cures the deficiencies discussed herein. Should they fail to do so, the claims against BNYM and BANA will be dismissed with prejudice.

ORDERED this 23 day of June 2014.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING MOTIONS TO DISMISS-
13